NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal Case No. 06-33(FSH) |
| v. | : | OPINION |
| MICHAEL MELVIN, | : | September 25, 2009 |
| Defendant. | : |  |

**HOCHBERG, District Judge**

On March 12, 2007, Michael Melvin pled guilty to a one-count indictment which charged that he was a felon in possession of firearms and ammunition, specifically a Leinad Cobray CM-11 9mm semi-automatic pistol loaded with 30 rounds of ammunition, and a loaded Charter Arms Bulldog .44-caliber revolver, in violation of Title 18, United States Code, Section 922(g)(1)[1].

I.   BACKGROUND

On September 2, 2005, members of the Essex County Major Crimes Task Force, sought to execute arrest warrants for Michael Melvin and his girlfriend, Tiffani Scott, at 103 Center Street, Apartment 3, Newark, N.J., where Scott was the tenant of record.  Officers entered the apartment and arrested both Scott and Melvin.  Officers then conducted a sweep of the apartment.  They were informed by Melvin that there was a gun underneath the mattress in the bedroom.  From beneath the mattress in the bedroom shared by Melvin and Scott, officers recovered a loaded Charter Arms Bulldog .44-caliber revolver, serial number 209218, as well as

---

[1] The statutory maximum penalty for this offense is 10 years.  18 U.S.C. § 924.

numerous additional rounds of .44-caliber, .45 caliber ammunition, .38 special full metal jacketed rounds, and 9mm ammunition.

A search of the premises also resulted in the seizure of one Leinad Cobray CM-11 9mm semi-automatic pistol, serial number 94-0020826, loaded with 30 rounds of ammunition, from a closet. Also seized from the closet was a bag of powder cocaine, 40 small bags of crack cocaine, and three small bags of heroin. Various packaging and distributing materials were also discovered and taken as evidence.[2]

Melvin and Scott were advised of their *Miranda* rights and taken to the Newark Police Department for processing and interview. In a post-arrest statement, Melvin stated that Scott was his girlfriend and that he stayed with her several times per week. He admitted that both guns belonged to him but maintained that he was holding them for a friend, whose name he declined to provide to officers. He further contended that he had never used the guns.[3] Melvin further acknowledged that the cocaine, crack cocaine, heroin, and packaging materials were also his. He stated that he had purchased the drugs and paraphernalia from a friend, whom he again declined to identify. He stated that the drugs were for "personal use." Melvin stated that Tiffani did not know the guns or drugs were in the home.

---

[2] The drugs were analyzed at the Newark Police Department's Forensic Laboratory. The bag of powder cocaine was determined to be in the amount 51.49 grams. The crack cocaine contained within 40 orange zip-lock bags amounted to 10.4720 grams. The heroin contained within three glassine envelopes amounted to .0642 grams.

[3] The firearms were analyzed by the Newark Ballistics Laboratory. The Leinad CM-11 was accompanied by two, 32-round high capacity magazines. The weapon had a heat shield and an extended barrel. The Charter Arms Bulldog revolver was accompanied by 25 semi-jacketed hollow-point bullets, six wad cutters (practice or target ammunition), and one lead round nose bullet.

The loaded Leinad Cobray CM-11 9mm semi-automatic pistol, serial number 94-0020826, and the loaded Charter Arms Bulldog .44-caliber revolver, serial number 209218, were manufactured outside the State of New Jersey. The Leinad Cobray CM-11 firearm was reported stolen in North Carolina on May 5, 2002.

A review of Melvin's criminal history records revealed that prior to September 2, 2005, Melvin was convicted of felony offenses each punishable by terms of imprisonment greater than one year in a court in the State of New Jersey. Specifically, on May 9, 2005, Michael Melvin was convicted in the Superior Court of New Jersey, Essex County, for Unlawful Possession of a Weapon - Handgun, in violation of N.J.S.A. 2C:39-5D, and Resisting Arrest, in violation of N.J.S.A. 2C:29-2.

Melvin was arrested for the instant offense and charged locally by Newark police on September 2, 2005. He was released on bail on October 19, 2005. The charges were waived to the federal level on November 9, 2005 and a warrant was issued for Melvin's arrest. On November 9, 2005, Lamar McMillan[4] was shot and killed in Newark, New Jersey. That same day, Melvin was arrested and charged with McMillan's murder. Two days later, on November 11, 2005, federal authorities attempting to execute the warrant on the instant charges located

---

[4] Lamar McMillan and another were witnesses to the quadruple homicide of four persons in Newark on November 26, 2004; one woman and three men were shot to death, execution style and their bodies were left adjacent to a church wrapped in black plastic bags. The investigation led to the Defendant Michael Melvin, and he was thereafter indicted for the murders. However, the quadruple murder indictment had to be dismissed by the State because Lamar McMillan and another witness to the quadruple homicide were themselves both murdered. Michael Melvin was charged with the murder of McMillan and entered a guilty plea to aggravated manslaughter on this charge on October 18, 2007.

Melvin in custody at the Essex County Jail and lodged the warrant as a detainer against Melvin's release.

On October 18, 2007, Melvin pled guilty in the Superior Court of New Jersey, Essex County, to aggravated manslaughter in the homicide of Lamar McMillan, aggravated assault against Scott and unlawful possession of a weapon. His plea agreement with Essex County stated that his state sentence would run concurrent to the federal sentence on this charge. In a stratagem to force this Court to have "primary jurisdiction" and thus sentence Melvin first, Essex County released Melvin on bail on December 11, 2007. The transcript of the state court plea makes clear that this was done by the Essex County prosecutor to insure that this Court would be prevented from imposing a consecutive sentence on the instant felon in possession charge.[5]

To grant bail to a defendant who has just pled guilty to homicide was done by Essex County to force federal authorities to take Melvin into custody and thus be required to sentence first. In this Circuit, a District Judge cannot impose a sentence that runs consecutive to one that has not yet been imposed. In a case such as this, where that principle is exploited, a District

---

[5] It is a deplorable practice that defies all principles of comity to release a notorious killer on bail solely in order to force this Court, a sovereign body, to sentence Melvin first and strip its authority to decide whether the sentence shall run consecutively or concurrently to the state sentence. See 18 U.S.C. § 3584. At the state plea, the Essex County Prosecutor stated that the state would agree to recommend a custodial sentence not to exceed 16 years to run concurrent to the sentence on this instant charge. Specifically, the prosecutor said "[i]t is my understanding also, Your Honor, that he has pled guilty to a pending charge, a federal charge, I should say in our Federal District Court. . . [t]he intent is that if that sentence is run concurrent to the state sentence, so be it, that - - I don't know how to facilitate it, as I was saying before, but the intent of the agreement is to have one sentence run concurrent with the other sentence." The state court's "bail" maneuver in the instant action, i.e., manipulating which court would have primary jurisdiction, in order to bind this Court's hands on the issue of consecutive sentencing is shocking. However, this is an issue for the state and federal courts to resolve between themselves and it is not considered in determining the appropriate sentence for Michael Melvin.

Judge should be permitted to exercise the discretion to decide whether a sentence should be consecutive or concurrent. However, this Court is bound by the law of this Circuit and must follow it. The statement of reasons for the sentence that is set forth herein does not consider the inter-court "primary jurisdiction" issue described above.

II.     THE PRESENTENCE REPORT

A presentence report was prepared and submitted to the Court on December 17, 2008. The Probation Officer calculated a total offense level of 23, a criminal history category of IV and an advisory guideline imprisonment range of 70 to 87 months. On February 3, 2009, this Court entered an Order giving notice of its intention to consider an upward departure and/or variance in this matter and permitted counsel to file new sentencing memoranda that addressed the propriety of such a departure and/or variance. A revised presentence report was prepared on June 17, 2009, addressing the criminal history calculation. On June 22, 2009, the Court asked the parties to file any supplemental memoranda they might have with respect to the revised presentence report. Michael Melvin was sentenced on September 14, 2009.

III.    DISCUSSION

A.     The Process for Determining a Sentence

The United States Court of Appeals for the Third Circuit recently restated the proper process to be used by a sentencing court post- *Booker*.[6]  U.S. v. Lofink, 564 F.3d 232 (3d Cir. 2009).

---

[6] United States v. Booker, 543 U.S. 220, 246 (2005).

> This three-step process is to be used:
>
> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker[;] (2) [i]n doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre- Booker case law, which continues to have advisory force[; and] (3) [f]inally, they are required to exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

Id.; United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006). Accordingly, this Court will consider each of these three steps in turn in fashioning an appropriate sentence for Defendant.[7]

      B.      Guidelines Calculation

The first step in the sentencing process is to determine the proper guideline range for the defendant's sentence. The Defendant's offense level is determined under U.S.S.G. § 2K2.1(a)(4)(B). The Base Offense Level is 20, based upon his possession of a semi-automatic firearm capable of accepting a large capacity magazine. This is the applicable Base Offense Level regardless of whether the Court uses the 2004 edition of the Guidelines Manual, which was in effect when Melvin committed the offense, or the current, 2008 version.[8]

---

[7] The standard by which a district court finds facts relevant to sentencing is by a preponderance of the evidence. United States v. Grier, 475 F.3d 556 (3d Cir. 2007).

[8] Defendant argues that because the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA) had expired on September 13, 2004, approximately one year before Melvin's commission of the offense, the base offense level improperly relies on "an inoperable statutory provision," and therefore subjects Melvin to more severe punishment, in violation of his Constitutional rights. In essence, he argues that, even though the 2004 book and the 2008 book have the same base offense level of 20, the way it was described in the 2004 book was a nullity because it described a weapon by reference to the sunsetted assault weapons ban statute.

    It is undisputed that Melvin possessed a Leinad Cobray CM-11 semi-automatic firearm. This weapon was analyzed by the Newark Police Department Ballistics Laboratory and was found to be a firearm capable of accepting a large capacity magazine. It also had a heat shield

and an extended barrel.  It is also agreed that the relevant guideline section for determining the offense level applicable to Melvin is U.S.S.G. § 2K2.1.  The base offense level is determined on the basis of two factors: the weapons that Melvin possessed, and Melvin's prior criminal history.

Melvin was a prohibited person at the time he possessed the firearms.  As defined in the Commentary to U.S.S.G. § 2K2.1, Application Note 3, a prohibited person is one who has been previously convicted of one or more felony offenses, punishable by a term of imprisonment of one year or more.  At the time Melvin possessed the firearms, he had two prior felony convictions in New Jersey.

Defendant relies on three cases in support of his ex post facto argument:  United States v. Whitehead, 425 F.3d 870 (10th Cir. 2005); United States v. Roberts, 442 F.3d 128 (2d Cir. 2006); and United States v. Simmons, 485 F.3d 951 (7th Cir. 2007).  While each of these cases did find that the version of U.S.S.G. § 2K2.1(a)(4)(B) in place at the time of the conduct rather than at the time of the sentencing applied, each of the courts in these cases also specifically held that to adopt the reasoning Melvin suggests would undermine Congressional intent and render the relevant Guideline provision superfluous.

Regardless of which "book" the Court uses to calculate Melvin's guideline range, the base offense level is 20.  Using the 2004 edition of the Guidelines Manual, Melvin's base offense level is 20 under U.S.S.G. § 2K2.1(a)(4)(B), because the offense involved a firearm described at 18 U.S.C. § 921(a)(30).  Whether the VCCLEA was an independent criminal violation at the time Melvin committed the offense has no bearing on the applicability of the guideline enhancement under U.S.S.G. § 2K2.1.  The enhancement applies to more powerful, and more deadly, weapons.  Melvin undisputedly possessed a more powerful, and deadly, weapon.

The fact that the 2004 edition of the Guidelines Manual described firearms listed in the statute governing the VCCLEA does not render the base offense level of 20 inapplicable.  The United States Sentencing Commission's (USSC) reference to 26 U.S.C. § 5845(a) and 18 U.S.C. § 921(a)(30) was to define and describe the guns.  That is, the USSC utilized descriptions of firearms found in the VCCLEA to determine offense levels, corresponding to the firearms possessed and the backgrounds of those unlawfully possessing them.  The greater the firearm's destructive capabilities, the higher the offense level; the more serious a defendant's criminal record, the greater the punishment.  Clearly, the intent of the USSC, empowered by Congress to establish the  Sentencing Guidelines, was to punish more harshly those offenders possessing certain types of firearms, particularly those already convicted of felony offenses.

The expiration of the VCCLEA did not legalize the weapons listed in the respective statutory sections by convicted felons.  It is not as if suddenly, on September 13, 2004, semi-automatic firearms were no longer illegal to possess by felons, and such acts no longer punishable criminally.  Also, the USSC's use of the descriptions of more powerful guns in the VCCLEA did not become invalid because the VCCLEA was no longer in effect as an independent crime.

The USSC amends the Guidelines Manual annually to reflect changes to law and other updates and modifications as necessary.  For the 2005 edition, which became effective November 1, 2005, there were no changes to U.S.S.G. § 2K2.1.  In the November 1, 2006, edition of the Guidelines Manual the USSC removed the reference to 18 U.S.C. § 921(a)(30), and replaced it

That guideline establishes a base offense level of 20 for possession of a semi-automatic firearm capable of accepting a large capacity magazine by a prohibited person. It then imposes increases and decreases in the offense level based on various specific characteristics: an increase of 2 levels if any firearm was stolen, § 2K2.1(b)(4); and an increase of 4 levels if the defendant used or possessed the firearm in connection with another felony offense.

The probation officer recommended, and this Court finds, that Melvin's base offense level is 20, U.S.S.G. § 2K2.1(a)(4)(B); that he should receive a two-level increase because one of the firearms was reported stolen in North Carolina in 2002; and that he should receive a four-level increase because he possessed the firearms in connection with another felony offense, i.e., Melvin possessed the firearms in connection with the possession of cocaine, crack cocaine, heroin and distribution materials.[9] Thus, his adjusted offense level is 26. After a three-level

---

with the description of a semi-automatic firearm capable of accepting a large capacity magazine, showing clearly that it is the type of gun that the Commission wished to address in the base offense level of 20, which remained unchanged.

[9] Defendant argues that he should not be given the four-level enhancement for use or possession of the firearm in connection with another felony offense because he believes that Probation has failed to make a connection between possession of the firearms and possession of the narcotics. Defendant asserts that possession of the narcotics and possession of the firearms were two unrelated matters because the drugs were for his own personal use. Defendant contends that the enhancement should not apply when the "presence or involvement [of the firearm is] the result of accident or coincidence." Smith v. United States, 508 U.S. 223, 238 (1993).

Defendant's claim that the drugs were for his own personal use is not credible in light of the multiple types of drugs found, and the packaging materials. Defendant has a criminal history of distributing controlled dangerous substances, and in fact, was on probation for selling drugs at the time of the instant offense. Thus, it undermines his credibility in claiming that the powder cocaine, crack cocaine and heroin were for his own personal use. Second, in the closet with the guns and drugs were packaging materials commonly used for drug distribution. Moreover, there is a connection between the firearms and the drugs. Application Note 14(B) to U.S.S.G. § 2K2.1(b)(6) states that the 4-point enhancement set forth in that section applies where the "firearm is found **in close proximity to drugs**, drug-manufacturing material or drug

reduction for acceptance of responsibility, his total offense level is 23.  Melvin has 9 criminal history points and, therefore, a criminal history category of IV.

      C.      Motions/Departures

Having determined the appropriate Guideline range, this Court must now rule on any departure motions brought by the parties, indicate whether it is granting a departure, and, if so, state how that departure affects the Guidelines calculation.  United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).  Should this Court decide to depart, it will analogize the extent of the departure to Guidelines' adjustments, and employ the ratcheting procedure where required.  United States v. Colon, 474 F.3d 95, 99 & n.8 (3d Cir. 2007).  Ratcheting requires the court, in determining which category best represents a defendant's prior criminal history, to proceed sequentially through the categories and must not move to the next category until it has found that a prior category still fails adequately to reflect the seriousness of the defendant's history.  United States v. Hickman, 991 F.2d 1110, 1114 (3d Cir.1993).

The Government has moved for an upward departure based on the under-representation of Defendant's criminal history pursuant to U.S.S.G. § 4A1.3.[10]  The Government argues that because Defendant has pled guilty to, but not yet been sentenced for, an aggravated manslaughter

---

paraphernalia." (emphasis added).  In the instant case, when Defendant was arrested on September 2, 2005, the stolen firearm, Leinad Cobray CM-11 9mm semi-automatic pistol (loaded with 30 rounds of ammunition) was located in the same closet as a bag of powder cocaine, 40 small bags of crack cocaine and three small bags of heroin.  There can be no genuine dispute that this firearm and the drugs found in the same closet were in close proximity to each other.  It was not "accident or coincidence" that Melvin had stashed his drugs and guns in the same location.  See, e.g., United States v. Loney, 219 F.3d 281 (3d Cir. 2000).  Accordingly, the Court finds by a preponderance of the evidence that the 4-point enhancement set forth in U.S.S.G. § 2K2.1(b)(6) properly applies.

   [10]  Defendant has made no departure motions.

charge in Essex County Superior Court[11], Defendant's Criminal History Category therefore fails to reflect two additional criminal history points under U.S.S.G. § 4A1.1(b). Should this Court grant this upward departure, under the ratcheting procedure, Defendant's Criminal History Category would be adjusted from IV to V, for an advisory Guidelines Sentencing Range of 84 to 105 months.

Under the Guidelines, an upward departure may be appropriate if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3. In deciding whether such a departure is warranted, this Court may consider "[w]hether the defendant was pending trial or sentencing on another charge at the time of the instant offense," U.S.S.G. § 4A1.3(a)(2)(D), and "[p]rior similar adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(a)(2)(E). These factors listed in § 4A1.3(a)(2) are "neither exclusive nor exhaustive." United States v. G.L., 143 F.3d 1249, 1254 (9th Cir. 1998). The Court may also contemplate an upward departure for, by way of example, "[c]ommission of the instant offense while on bail or pretrial release for another serious offense." Application Note 2(A)(iv). Upward departures also may be warranted based on admitted or established criminal conduct that will ultimately lead to a conviction and sentence. See, e.g., United States v. Terry, 930 F.2d 542, 544 (7th Cir. 1991) (upward departure warranted under § 4A1.3 for two residential burglaries that did not result in a conviction); United States v. Gaddy, 909 F.2d 196, 200-01 (7th Cir. 1990) (district court's upward departure under § 4A1.3 was justifiable "for seven burglary offenses to which Gaddy had

---

[11] A sentence that will certainly include imprisonment for more than one year and one month. § 4A1.1(a).

pleaded guilty in Kern County, California, but for which he was not sentenced because he jumped bail").

In the instant case, Melvin was originally held by the State of New Jersey on a detainer from Essex County for the murder of Lamar McMillan. Melvin has pled guilty to aggravated manslaughter in connection with causing McMillan's death and signed a plea agreement to serve 16 years in state jail. However, for the reasons described above, Melvin has not yet been sentenced by Essex County for this homicide. Therefore, Melvin did not incur the two additional Criminal History points under U.S.S.G. § 4A1.1(b) that his homicide crime deserved. Thus, his point score under-represents his true criminal history. Had he been sentenced by the state court before being turned over to the federal court for this sentencing, his point score would yield a Criminal History Category V. Instead, under the technically correct Guidelines calculation, Melvin was scored only one point for having caused the death of Lamar McMillan.[12] In order to correctly represent Melvin's criminal history, the scoring should have two points for this homicide. Melvin is therefore similarly situated with the defendants in Terry, 930 F.2d at 544, and Gaddy, 909 F.2d at 200-01, because Melvin has admitted criminal conduct that will ultimately lead to a conviction and sentence. Accordingly, Melvin's criminal history category does not represent his true criminal history and should be scored an additional two additional criminal history points, yielding a Criminal History Category of V.

The Court has also considered other factors in determining whether an upward departure is warranted. These factors include conduct contemplated by U.S.S.G. § 4A1.3(a)(2)(D),

---

[12] Where a defendant has been convicted of an offense but has not yet been sentenced, such conviction is counted as if it constituted a prior sentence under § 4A1.1(c). § 4A1.2(a)(4). A prior sentence under § 4A1.1(c) is worth 1 point.

U.S.S.G. § 4A1.3(a)(2)(E) ("[p]rior similar adult criminal conduct not resulting in a criminal conviction"), and Application Note 2(A)(iv), U.S.S.G. § 4A1.3 ("[c]ommission of the instant offense while on bail or pretrial release for another serious offense").  In the instant case, the specific conduct considered is the following:  (1) at the time of the instant offense of conviction, Melvin was on three separate terms of probation for weapons and drug offenses;[13] (2) Defendant was on state bail from the instant firearms offense when he caused McMillan's death;  (3) the charges in State Court that were dismissed as part of Melvin's plea agreement involved more weapons offenses:  aggravated assault in the second degree, unlawful possession of a weapon in the third degree, and three separate counts of possession of a weapon for an unlawful purpose in the second degree; (4) Defendant has at least two prior firearms convictions;[14] and (5) Melvin has a violation of probation pending for the charges comprising the instant offense, unpaid penalties and fines and for continued drug use.  These incidents illustrate that "reliable information indicates" that Melvin's "criminal history category substantially under-represents the seriousness

---

[13] Pursuant to U.S.S.G. § 4A1.1(d), two points were added because Michael Melvin was on probation at the time he committed the instant offense.  However, Michael Melvin was actually on three separate terms of probation at the time of the instant offense.  Despite this fact, Melvin received the same two points that another defendant who was only on one term of probation would receive.  The Court therefore finds that the two points assessed Melvin under U.S.S.G. § 4A1.1(d) is inadequate to account for the fact that he was on three separate terms of probation when he committed the instant offense.

[14] In paragraph 58 of the presentence investigation report, Defendant was arrested on February 28, 2001, and pled guilty to, *inter alia*, unlawful possession of a handgun, for which Melvin received 3 years probation on each count to run concurrent.  In paragraph 63 of the presentence investigation report, Melvin was arrested on December 16, 2004 and pled guilty to a violation of firearms regulatory provisions, for which Melvin received 3 years probation to run concurrent to the offense in paragraph 58.

of the defendant's criminal history," and substantially under-reports the likelihood of his recidivism.

The Court finds that this is precisely the situation contemplated by the policy statement set forth in the Background section of the Commentary to U.S.S.G. § 4A1.3. This section states:

> This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur. For example, a defendant with an extensive record of serious, assaultive conduct who had received what might now be considered extremely lenient treatment in the past might have the same criminal history category as a defendant who had a record of less serious conduct. Yet, the first defendant's criminal history clearly may be more serious. This may be particularly true in the case of younger defendants (e.g., defendants in their early twenties or younger) who are more likely to have received repeated lenient treatment, yet who may actually pose a greater risk of serious recidivism than older defendants. This policy statement authorizes the consideration of a departure from the guidelines in the limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures.

Defendant Melvin's criminal history scoring had been on the cusp between Category IV and Category V. For all of the above reasons the Court finds that an upward departure to Criminal History Category V is warranted. Accordingly, the Court will depart upward pursuant to U.S.S.G. § 4A1.3, raising Defendant's Criminal History Category from IV to V, for an advisory Guidelines sentencing range of 84 to 105 months.

D.      Variances

The final step in determining a defendant's sentence is for the Court to consider the factors in 18 U.S.C. § 3553(a)[15] based on the specific circumstances of the case and the defendant, imposing no greater sentence than the maximum statutory penalties provided for the offense. In considering the § 3553(a) factors, a court need not recite each and every factor, as long as it is clear that they were considered. Rita v. United States, 551 U.S. 338 (2007).

After balancing the § 3553(a) factors, the Court finds that a guideline sentence of either 84 to 105 months (with the upward departure) or 70 to 87 months (without the upward departure)

---

[15] Section 3553(a) requires consideration of the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines-
(i) issued by the Sentencing Commission ..., subject to any amendments made to such guidelines by act of Congress ...; and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; ...
(5) any pertinent policy statement-
(A) issued by the Sentencing Commission ..., subject to any amendments made to such policy statement by act of Congress ...; and
(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

for this Defendant to be seriously inadequate to impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. 18 U.S.C. § 3553(a). Rather, it is necessary to go outside the guideline range and sentence at the statutory maximum of 120 months in order to justly meet the criteria of § 3553(a).

This Court has seriously considered each and every one of the § 3553 factors and will discuss in detail those factors that weigh heavily in favor of this Court's decision to sentence Defendant Melvin above the Guidelines range.[16]

    1.       Factors Weighing In Favor of Sentence Above Guidelines Range

          a.       The Nature and Circumstances of the Offense

The first § 3553(a) factor requires this Court to consider "the nature and circumstances of the offense." Defendant Melvin has committed this same offense before. Three weeks after the State of New Jersey released Melvin on bail on the current felon-in-possession charges, Melvin was again a felon-in-possession who used unlawfully possessed guns to kill Lamar McMillan. In addition, Melvin's guns were both found loaded and one of them had previously been stolen.

          b.       The History and Characteristics of the Defendant

The first § 3553(a) factor also requires this Court to consider "the history and characteristics of the defendant." Melvin's "history and characteristics" are highly relevant factors in determining that a lengthy sentence is required. Specifically, the number, nature and timing of his previous crimes leads the Court to the conclusion that the ten-year statutory

---

[16] The Court finds there are no mitigating factors that would justify varying downward on Defendant's sentence, and no such motion has been made by Defendant.

15

maximum sentence would be the most appropriate sentence in this case. Many of Melvin's prior adult offenses were committed by Melvin while he was on bail or probation for another offense. Melvin's criminal history is that of a person who has no respect for the law and for whom criminal charges pose no threat. Melvin committed crimes, most significantly the death of McMillan, when he knew he was under the direct scrutiny of law enforcement. The aggravated manslaughter offense and the aggravated assault of Ms. Scott demonstrate that Melvin has an extraordinary propensity for violence. The combination of Melvin's propensity for dangerous conduct and his lack of respect for the law leads this Court to the conclusion that a sentence above the guidelines range and at the statutory maximum is necessary to protect society.

   c.  The Need for the Sentence Imposed

The second § 3553(a) factor is "the need for the sentence imposed," § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," § 3553(a)(2)(A), "to afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "to protect the public from further crimes of the defendant," § 3553(a)(2)(C), and "to provide the defendant with needed educational or vocational training," § 3553(a)(2)(D).

In the instant case, more severe punishment is needed to deter Melvin from further crime and to promote respect for the law. Melvin has served very little time, during the course of his violent criminal life. Instead, he has received innumerable second chances, often receiving probation or very short sentences for his crimes. These short sentences have led Melvin to neither respect the law nor to fear repercussions from serious crimes in disrespect of the law.

Michael Melvin is on a very determined course of crime and these short sentences have done nothing to protect the public from his lawlessness, and have disrespected the legal process by killing a witness, thereby causing murder charges to be dropped against him, and to create an atmosphere of fear that will deter other witnesses from coming forward. The law does not serve justice and is not respected if witnesses are silenced.

    2.    Totality of § 3553(a) Factors

A sentence at the statutory maximum and above the guidelines range appropriately reflects: (1) the nature and circumstances of the offense; (2) Melvin's criminal history; (3) the need to deter others from committing similar, very serious crimes; and (4) is designed to protect the public from further crimes by Melvin. Melvin has shown an utter disrespect for the law by repeatedly engaging in criminal conduct, which often has involved possession of controlled dangerous substances, carrying firearms and killing at least one witness. Defendant's prior convictions have failed to deter him from returning to crime in an even bolder way. In addition, the public has a very real need to be protected from Melvin and his further crimes.

Separately and independently from the upward departure, this Court finds that an upward variance for this Defendant based on his characteristics and flagrant disregard for the law is necessary and he shall receive the statutory maximum of 120 months.

    IV.    CONCLUSION

For the reasons set forth above, this Court finds that the PSR correctly included a sentencing enhancement under U.S.S.G. § 2K2.1(b)(4) and U.S.S.G. § 2K2.1(b)(6), that the motion for an upward departure is properly granted; and that separately and independently, a

complete consideration of all the 18 U.S.C. § 3553 factors requires the imposition of the maximum statutory sentence allowed.  Accordingly, Defendant Melvin is sentenced to 120 months incarceration, together with such other terms and conditions that were stated at the sentencing hearing on September 14, 2009.  This Opinion regarding sentencing shall be attached to and incorporated by reference, in its entirety, into the Statement of Reasons and Judgment in this case.

s/ Faith S. Hochberg

**Hon. Faith S. Hochberg, U.S.D.J.**
